OPINION OF THE COURT
Thomas Feinman, J.
The People move for an order, in limine, permitting the introduction of expert testimony concerning Munchausen Syndrome By Proxy (hereinafter MSBP) at the trial of the instant matter. The defendant is charged with violating Penal Law § 260.10 (1) (Endangering the welfare of a child).
In essence, the People seek to put into evidence, as part of their case-in-chief, the mental condition of the defendant without the issue first being raised by plea or by introduction of the defendant’s state of mind as part of the defense. Defendant argues any reference to the disorder known as MSBP would be extremely prejudicial to the defendant and any probative value would be outweighed by its prejudicial effect.
It is uncontroverted that the defendant in the instant case has not been diagnosed as suffering from MSBP. The defendant argues that without a clinical diagnosis that the defendant suffered from this disorder, the risk exists that the jury may improperly infer that the defendant suffered from this disorder. However, the People allege that on November 14, 1998, the victim in the instant matter, Abriel Coulter, was diagnosed as being a victim of MSBP. MSBP has been defined as a phenomenon in which the parent induces or fabricates a child’s illness. (See, Matter of Suffolk County Dept. of Social Servs., 215 AD2d 395, 396 [2d Dept 1995], citing Matter of Jessica Z., 135 Misc 2d 520, 521 [Fam Ct, Westchester County 1987].)
First, assuming a medical doctor or professional is qualified as an expert in MSBP, the next question is whether or not the “expert’s” opinion is relevant. The People maintain that expert testimony concerning MSBP (1) is an essential part of proof, since it makes understandable aberrant behavior that is beyond the ken of the average juror; (2) is relevant on the issue of motive; (3) is relevant to the voluntariness of defendant’s confession; and (4) is essential in proving an element of the crime of endangering the welfare of a child, specifically, that *31 the defendant “knowingly” engaged in conduct likely to be injurious to the physical, mental or moral welfare of the child. (Penal Law § 260.10 [1].)
Based upon the doctor’s diagnosis that Abriel Coulter was a victim of MSBP, expert testimony may be appropriate to clarify issues which call for a professional or technical knowledge outside that of a typical juror. (De Long v County of Erie, 60 NY2d 296 [1983].) Therefore, whether expert testimony will be permitted pertaining to MSBP is held in abeyance pending a hearing on this subject. The admissibility of such testimony may be limited to explaining behavior that might appear unusual to a typical juror. Any proffered testimony introduced by the People’s expert must explain a diagnosis or syndrome and may not be used to establish a fact. (People v Archer, 232 AD2d 820 [3d Dept 1996].)
Any expert testimony elicited in this case of MSBP must be made in such a manner that it is clear that any finding of MSBP is not an opinion by the expert as to whether the defendant is actually guilty of the crime charged, but rather, to explain a motive, or that the types of injuries the victim suffered were not accidental. (People v Jackson, 18 Cal App 3d 504, 95 Cal Rptr 919 [1971].) Again, assuming the expert’s testimony is reliable, such testimony will be permissible on the issue of motive. Without the basis of accepted scientific principles, the court will not allow the jury to merely speculate as to the value of the expert’s testimony. Of course the defendant will not be prevented from impeaching the People’s expert or from presenting her own.
In People v Duell (163 AD2d 866 [4th Dept 1990]), the Supreme Court reversed the judgment of conviction because the trial court permitted expert testimony of “Child Abuse Accommodation Syndrome” for the purpose of proving that the child was sexually abused. In the instant matter, the court will not permit testimony which goes to the ultimate question of whether defendant is guilty of endangering the welfare of a child because such question is within the province of the jury to decide.
In People v Henson (33 NY2d 63 [1973]), the Court of Appeals ruled that the introduction into evidence of matters concerning the defendant’s alleged prior conduct toward the child/victim constituted reversible error. This case is distinguishable in that the evidence in Henson related to prior conduct of the defendant where the case at bar does not deal with prior conduct. However, the Henson Court went on to ad *32 dress the issue of admissibility of expert medical testimony concerning the “Battered Child Syndrome”. In Henson questions were posed by the prosecutor to medical experts that were designed to elicit testimony about the so-called “Battered Child Syndrome”. The defendant objected and the trial court sustained the objection. On appeal, the defendant argued the questions themselves prejudiced the jury. The Court held (at 73) “the trial court would have been entirely justified in allowing the witness to respond to the questions as part of the prosecution’s offer of circumstantial proof’. The Court of Appeals concluded by stating (at 74) “This sort of expert medical testimony — that the victim is a ‘battered child’ — coupled with additional proof — for instance, that the injuries occurred while the child was in the sole custody of the parents — would permit the jury to infer not only that the child’s injuries were not accidental but that, in addition, they occurred at the culpable hands of its parents.”
In People v Lemanski (217 AD2d 962 [4th Dept 1995]), the Supreme Court held that there was no merit in defendant’s contention that the County Court erred in admitting expert testimony in “Child Sexual Abuse Syndrome”. The Court went on to hold (at 962) that such “testimony is admissible to show that a victim’s conduct is consistent with that syndrome”. The Court further stated that (at 962) “[ajiding the jurors to appreciate and understand matters beyond the knowledge of the average juror is the purpose of expert testimony”.
In People v Taylor (75 NY2d 277 [1990]), the Court of Appeals addressed the admissibility of expert testimony of “Rape Trauma Syndrome”. In Taylor (at 288), the Court acknowledged that it has “upheld the admission of expert testimony in * * * child abuse cases despite the fact that childrearing and family life are familiar to the lay juror because the dynamics of sexually and physically abusive relationships within a family are not as familiar.” The Court concluded (at 293) that evidence of “Rape Trauma Syndrome” is inadmissible when it “inescapably bears solely on proving that a rape occurred”. Also, in People v Mercado (188 AD2d 941 [3d Dept 1992]), the Supreme Court again addressed the issue of expert testimony regarding “Rape Trauma Syndrome”. The Court held (at 942) such testimony may be admitted only “ ‘to explain [the victim’s] behavior that might appear unusual’ ” or that jurors might not be expected to understand. However, the Mercado Court found impermissible expert testimony about general behavioral characteristics and symptoms manifested by children who have suffered sexual *33 abuse. The Court held this testimony went beyond merely serving to explain what would otherwise be viewed by the jury as evidence tending to exculpate the person charged. This comparison of the complainant’s behavior (the rape victim) with that commonly associated with victims of these crimes is impermissible.
In People v Pierre (215 AD2d 599 [2d Dept 1995]), the Court citing People v Keindl (68 NY2d 410 [1986]) held “The trial court did not err in admitting expert testimony as to the psychological and behavioral characteristics typically shared by children who are victims of sexual abuse in a familial setting.”
In People v Weldon (191 AD2d 662 [2d Dept 1993]), the Court once again stated “In any event, the trial court did not improvidently exercise its discretion in allowing the testimony, which was properly offered to explain the behavior of a child who had been sexually abused”.
In the instant matter, the People argue that without evidence in the form of expert testimony explaining MSBP, the jury will be misled into believing that the only possible explanation for this defendant’s behavior is her uncommon commitment to her child. The People’s theory, coupled with the allegation that the defendant maintained a 54-day vigil at her infant’s bedside, is that the actual reason for refusing to leave her infant was for the purpose of tampering with the feeding apparatus. The ultimate responsibility of fact-finding rests with the jury to determine which scenario is accurate.
In People v Keindl (supra, at 422), the Court of Appeals held that “Opinion testimony of an expert witness is admissible where the conclusions to be drawn ‘depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence’ ” (Dougherty v Milliken, 163 NY 527, 533 [1900]; De Long v County of Erie, 60 NY2d 296 [1983], supra; People v Cronin, 60 NY2d 430 [1983]). It is within the sound discretion of the Trial Judge to determine when jurors are able to draw conclusions from the evidence based on their day-to-day experience and when they would benefit from the specialized knowledge of an expert. (People v Keindl, supra, at 422, citing People v Cronin, supra, 60 NY2d, at 433.)
There is no binding or controlling New York case law directly on point. However, the Court of Appeals of California for the First Appellate District has announced its decision which is on point and persuasive.
In People v Phillips (122 Cal App 3d 69, 175 Cal Rptr 703 [1981]), a defendant was convicted of murdering one of her *34 children and willfully endangering the life or health of the other child. On appeal, the defendant claimed the trial court erroneously admitted psychiatric testimony into evidence. The Court of Appeals found no reversible error and affirmed the lower court’s judgment of conviction.
In Phillips (supra), in order to suggest a motive for the defendant’s conduct, the prosecutor, over the objection of the defendant, presented evidence relating to the so-called MSBP through testimony by a psychiatrist. The psychiatrist had not examined the defendant, nor had he treated patients who displayed MSBP. Rather, the psychiatrist based his testimony upon various reports in professional journals. The prosecution posed hypothetical questions to the expert which theorized that a mother who repeatedly administered a cathartic sodium compound to her child, under circumstances identical to those presented by the facts in Phillips, displayed symptoms consistent with MSBP. The expert testified (122 Cal App 3d, at 78-79, 175 Cal Rptr, at 709) that the syndrome “ ‘is one in which an individual either directly or through the vehicle of a child feigns, simulates, or actually fabricates a physical illness * * * Typically, the illness is a dramatic one.’ ‘And “by proxy” simply means instead of the person making themselves ill, they go through the psychodynamic process in another.’ ”
The Court of Appeals found the admission of the expert’s testimony in Phillips (supra) was not error. The court concluded the evidence was relevant and admissible and noted the defendant failed to point to a statutory provision which would preclude the prosecutor from introducing otherwise admissible psychiatric testimony relevant to motivation on the ground that the defendant had not placed his or her mental state in issue.
In People v Phillips (supra, 122 Cal App 3d, at 87, 175 Cal Rptr, at 714), the court acknowledged that the probative value of expert testimony was speculative and posed a risk of confusion and prejudice. In particular, the testimony purported to attribute symptoms of mental illness to the defendant and invited the jury to speculate that the defendant was suffering from MSBP. The court went on to hold that both risks were minimalized by the trial court’s instructions and by the defendant’s own witnesses.
In the case at bar, the fact that the People’s expert witnesses would be testifying as to reports of others rather than on their own observations of the defendant goes to the weight of the testimony, not the admissibility. However, any reports relied *35 upon by the experts must meet the standard of reasonable reliability.
Defendant argues that the People have not shown that MSBP is a recognized psychological disorder in New York. Defendant further argues that without conducting a Frye hearing, the evidence of MSBP should be precluded. Defendant also argues that because “the People have already answered ready for trial, it is too late now to hold a ‘Frye’ hearing”. The court rejects the latter argument.
Generally courts are able to make a determination as to whether the Frye standard has been satisfied by reference to scientific literature or judicial opinions. If these sources are insufficient, the court must conduct a hearing at which expert testimony will be taken on the issue of general acceptance in the relevant scientific community.
This court is not prepared to make specific evidentiary rulings regarding expert testimony as requested by the People’s instant motion, without conducting such a hearing. At the hearing, the court must be satisfied that the People have established, through their expert, that MSBP is generally accepted in the field of psychiatry or psychology and that it would assist the jury in rendering a verdict. (People v Wernick, 89 NY2d 111, 114 [1996], citing Frye v United States, 293 F 1013 [1923].) The court will not permit experts to “parade” before the jury nontestifying experts’ publications about a theoretical profile, without a reliability foundation being satisfied at the threshold. (People v Wernick, supra, at 118.)
Accordingly, as previously mentioned, the People’s motion for leave to introduce expert testimony is held in abeyance pending the outcome of the hearing. Defendant’s motion for a Frye hearing to determine the admissibility and scientific reliability of the People’s experts’ expected testimony on MSBP is granted.